**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BARBARA RUTHERFORD, EDWARD MIECHLE, RACHEL GARZA, BETH RENEE BRODHACKER, SANDRA ZOLA, THOMAS VOGEL, TOM BENHOFF, EMIL SMITH, CONNIE TESTA, and DARRELL LANE,** | ) ) ) ) ) ) ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )   **CIVIL NO. 06-159-GPM** |
| | ) |
| **MERCK & CO., INC., WALGREEN CO., d/b/a WALGREENS, and AMERICAN DRUG STORES, INC., d/b/a OSCO DRUGS,** | ) ) ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This action is before the Court on the Motion to Remand brought by Plaintiffs Barbara Rutherford, Edward Miechle, Rachel Garza, Beth Renee Brodhacker, Sandra Zola, Thomas Vogel, Tom Benhoff, Emil Smith, Connie Testa, and Darrell Lane (Doc. 18).  For the following reasons, the motion is **GRANTED**.

## INTRODUCTION

Plaintiffs originally filed this action in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, asserting claims based upon strict products liability, negligence, consumer fraud, common-law fraud, and breach of warranty arising from personal injuries allegedly caused by Vioxx, a prescription pain medication manufactured by Defendant Merck & Co. ("Merck").  Merck subsequently removed the action to this Court, asserting that Defendants Walgreen Co.

("Walgreens") and American Drug Stores, Inc. ("Osco Drugs"), who are, like Plaintiffs, citizens of Illinois, have been fraudulently joined to defeat federal diversity jurisdiction.  Plaintiffs have requested remand of the action to Illinois state court for lack of subject matter jurisdiction.

At issue here are Count III, Count VI, and Count XI of Plaintiffs' complaint, which assert, respectively, claims for sale of a defective product sounding in strict products liability, negligent failure to warn, and breach of warranty against Walgreens and Osco Drugs.  More specifically, Plaintiffs' complaint alleges that Walgreens and Osco Drugs filled prescriptions for Vioxx for Plaintiff Barbara Rutherford and that Osco Drugs filled prescriptions for Vioxx for Plaintiff Edward Miechle.  Merck contends that Plaintiffs have fraudulently joined Walgreens and Osco Drugs because Plaintiffs' claims against those parties are barred by the "learned intermediary" doctrine under Illinois law.  Also, Merck contends that under Illinois law a sale of prescription medication does not constitute a sale of "goods" for purposes of Article 2 of the Illinois Uniform Commercial Code ("Illinois UCC").  Finally, Merck contends that the claims in this case are procedurally misjoined so as to amount to fraudulent joinder.  The Court will address each of these contentions in turn.

### DISCUSSION

### A.    Merck's Request for a Stay

In opposing Plaintiffs' request for remand, Merck urges the Court to stay proceedings in this action pending transfer of the action by the Judicial Panel on Multidistrict Litigation ("JPML") for coordinated or consolidated pretrial proceedings.  *See* 28 U.S.C. § 1407.  As Merck acknowledges, the Court retains full jurisdiction over this action until such time as a transfer order by the JPML is filed in the office of the clerk of the district court of the transferee district, in this instance the United

States District Court for the Eastern District of Louisiana.  *See Illinois Mun. Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 850 (7th Cir. 2004); *Wisconsin v. Abbott Labs.*, 390 F. Supp. 2d 815, 819 (W.D. Wis. 2005).  The decision to grant a stay rests within the Court's discretion.  *See Walker v. Merck & Co.*, No. 05-CV-360-DRH, 2005 WL 1565839, at *2 (S.D. Ill. June 22, 2005).

In *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001), the court noted that, while it is within the power of a district court to grant a stay of proceedings although subject matter jurisdiction is in question, a court should be "reluctant" to grant such a stay "without making any effort to verify jurisdiction" for a number of reasons.  *Id*. at 1048.  First, the *Meyers* court stated, "*Steel Co.* [*v. Citizens for a Better Environment*, 523 U.S. 83 (1998),] emphasized the constitutional importance of the 'jurisdiction first' principle." 143 F. Supp. 2d at 1048.  *See also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (issues affecting a court's subject matter jurisdiction are "fundamentally preliminary").  Second, the court said, "28 U.S.C. § 1447(c) directs that '[i]f at any time before judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded.'" 143 F. Supp. 2d at 1048 (emphasis in original).  "This section dictates that a judge should give at least some consideration to a remand motion."  *Id*.

Third, the *Meyers* court concluded, considerations of judicial economy dictate that a court conduct at least limited review of a remand motion before granting a stay:  "If the limited review reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the [transferor] court . . . should dismiss the case rather than waste the time of another court."  143 F. Supp. 2d at 1048 (quoting *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999)).  Fourth, "even though a stay does not directly implicate the merits of a case, it undeniably has important effects on the litigation.  A plaintiff may carefully craft a state court complaint in order to avoid

litigating the matter in federal court." *Id*. "Justice Holmes observed that 'the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a . . . suit arising under . . . the patent or other law of the United States by his declaration or bill.'" *Id*. (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)).

The *Meyers* court concluded that, when faced by a request for a stay while a challenge to jurisdiction is pending, "a court's first step should be to make a preliminary assessment of the jurisdictional issue." 143 F. Supp. 2d at 1048.  If this "first step" suggests that removal was improper, then the court "should promptly complete its consideration and remand the case to state court." *Id*. at 1049.  *See also Chinn v. Belfer*, No. Civ.02-00131-ST, 2002 WL 31474189, at *3 (D. Or. June 19, 2002) (in denying a request for a stay of a case pending transfer of the case by the JPML, conducting a preliminary assessment of the merits of the plaintiffs' request for remand of the case to state court and concluding that, where "the jurisdictional issue is not factually or legally difficult," a stay would be denied and the case would be remanded to state court).  In this instance the Court's preliminary assessment of Plaintiffs' motion to remand indicates that the Court should proceed to resolve the motion.

### B.    Plaintiffs' Motion to Remand

#### 1.    Legal Standard

Removal based on diversity requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000.  *See* 28 U.S.C. § 1332; *Id*. § 1441.  The party seeking removal has the burden of establishing federal jurisdiction.  *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).  "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum."  *Id*.  Put another way, there is a strong presumption in

favor of remand.  *See Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976).

In evaluating diversity of citizenship, a court must disregard a defendant that has been fraudulently joined.  *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999).  A defendant is fraudulently joined when "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant[ ] in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts."  *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).  A defendant seeking removal based on alleged fraudulent joinder has the "heavy" burden of proving that, after the court resolves all issues of law and fact in the plaintiff's favor, there is no possibility the plaintiff can establish a cause of action against the diversity-defeating defendant in a state court.  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992).

## 2. Plaintiffs' Claims for Strict Products Liability and Negligence Against Walgreens and Osco Drugs

As discussed, Merck argues that Count III and Count VI of Plaintiffs' complaint, which assert claims for strict products liability and negligence against Walgreens and Osco Drugs, are barred by the "learned intermediary" doctrine under Illinois law.  The learned intermediary doctrine, which applies to both negligence and strict liability claims, provides that, where a manufacturer of a prescription drug provides adequate warning to physicians of the drug's known dangerous propensities, the manufacturer and pharmacists dispensing the drug are relieved of a duty to warn the drug's potential users; instead, the physicians, using their medical judgment, have a duty to convey the warnings to their patients.  *See Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392 (Ill. 1987); *Fakhouri v. Taylor*, 618 N.E.2d 518, 519-20 (Ill. App. Ct. 1993); *Leesley v. West*, 518 N.E.2d 758, 761-62 (Ill. App. Ct. 1988); *Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551, 552-53 (Ill. App. Ct. 1985).  *See also Ashman v. SK & F Lab Co.*, 702 F. Supp. 1401,

1404-05 (N.D. Ill. 1988) (applying Illinois law).

In this instance Plaintiffs specifically have pleaded a well established exception to the learned intermediary doctrine for cases in which a pharmacy is aware of a patient's health history, yet dispenses to the patient a contraindicated drug.  In *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118 (Ill. 2002), the court held that a pharmacy owes a duty to warn either a customer or the customer's physician that a drug is contraindicated where the pharmacy knows of the customer's drug allergies and knows that a prescribed drug is contraindicated for a person with those allergies. *See id.* at 1124-25.  The complaint in this case alleges with respect to Plaintiff Barbara Rutherford that "[s]he took Vioxx that was sold to her by Walgreens and by Osco Drugs in Illinois. Walgreens and Osco Drugs, knowing of her health history, sold her Vioxx without warning that Vioxx was not advisable because of her health history . . . . Because of her use of Vioxx, she suffered a heart attack."  Compl. ¶ 2.  As to Plaintiff Edward Miechle, the complaint alleges that "Osco Drugs, knowing of his health history, sold him Vioxx without warning that Vioxx was not advisable because of his health history.  Because of his use of Vioxx, he suffered a heart attack." *Id.* ¶ 3.  The complaint alleges that Walgreens and Osco Drugs "knew about the health histories of plaintiffs and knew that Vioxx was contraindicated or not advisable for someone with their respective health histories, but nevertheless sold Vioxx without warning plaintiffs about this contraindication." *Id.* ¶ 87.  Finally, the complaint alleges that "[a]s a direct and proximate result of defendants' negligence and breaches of their duty of reasonable care, plaintiffs have been damaged." *Id.* ¶ 89.

The scope of the Court's inquiry at this juncture is extremely narrow, namely, to determine whether, after resolving all issues of fact and law in Plaintiffs' favor, Plaintiffs have stated a claim

against Walgreens and Osco Drugs upon which relief can be granted in Illinois state court.  *See Simmons v. Norfolk S. Ry. Co.*, 324 F. Supp. 2d 914, 917 (S.D. Ill. 2004) (finding that a diversity-defeating defendant had not been fraudulently joined where "at a minimum [the plaintiff] has stated a cause of action under state law" against that defendant); *Valentine v. Ford Motor Co.*, No. 2:03-CV-090-JDT-WGH, 2003 WL 23220758, at *4 (S.D. Ind. Nov. 21, 2003) (explaining that "[t]he test for fraudulent joinder . . . is a less searching test than the test under Rule 12(b)(6) [of the Federal Rules of Civil Procedure].  In fact, a federal court may find that a nondiverse defendant is not fraudulently joined for the purposes of jurisdiction, and later a state court may find that the plaintiff failed to state a claim against the same nondiverse defendant, who will then be dismissed from the suit.") (citations omitted). *Accord Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (noting that the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Rule 12(b)(6) of the Federal Rules of Civil Procedure]."). *Cf. Bane v. Ferguson*, 890 F.2d 11, 13 (7th Cir. 1989) (a court need not resolve unsettled questions of law in favor of a plaintiff in ruling on the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted).

In evaluating a claim of fraudulent joinder a court may in some circumstances "pierce the pleadings."  *CC Indus., Inc. v. ING/ReliaStar Life Ins. Co.*, No. 03 C 2075, 2003 WL 21360905, at *3 (N.D. Ill. June 11, 2003).  However, this too is a strictly circumscribed inquiry limited to uncontroverted summary evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to a plaintiff under applicable state law. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 94, 96-98 (1921) (holding that a non-diverse defendant was fraudulently joined where a verified petition for removal alleged that the defendant was not present

at all when the plaintiff was injured, and the plaintiff did not controvert those verified allegations); *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 183-85 (1907) (in a suit for injuries sustained due to a machine that allegedly was defectively designed, holding that a non-diverse defendant was fraudulently joined where uncontradicted affidavits showed that the defendant was merely a draftsman with no responsibility for designing the machine at issue); *Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 654-55 (7th Cir. 1992) (in an action for strict products liability and negligence, finding that the plaintiff had fraudulently joined a co-worker, in light of the non-diverse defendant's "uncontradicted affidavit, essentially stating that he has had absolutely nothing to do with" the machine alleged to have caused the plaintiff's injury).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), the court stated that fraudulent joinder would be established as to a non-diverse pharmacist if it could be shown that "the in-state pharmacist defendant did not fill a prescription for the plaintiff patient."  *Id*. at 574 n.12.  *See also Veugeler v. General Motors Corp.*, No. 96 C 7278, 1997 WL 160749, at *3 (N.D. Ill. Apr. 2, 1997) (in a strict products liability action based on an allegedly defective airbag, fraudulent joinder was established by an uncontradicted affidavit of a non-diverse defendant alleged to have designed, manufactured, and supplied the airbag at issue that, although it negotiated for the contract to install airbags in cars manufactured by its co-defendant, it was not awarded the contract and "never supplied airbags or any component part thereof for installation in [the manufacturer's vehicles], including the vehicle described in plaintiff's Complaint at Law"); *Bodine's, Inc. v. Federal Ins. Co.*, 601 F. Supp. 47, 49-50 (N.D. Ill. 1984) (in an action seeking a declaration that an insurer owed coverage under an insurance contract, holding that the subject insurance policy along with uncontradicted affidavits of non-diverse defendants established that the non-diverse defendants

were not parties to the insurance contract and therefore established that they were fraudulently joined).  *Cf. Peters v. AMR Corp.*, No. 95 C 588, 95 C 922, 95 C 678, 95 C 1417, 95 C 923, 95 C 1418, 1995 WL 358843, at **3-4 (N.D. Ill. June 13, 1995) (in a strict products liability action, rejecting a claim of fraudulent joinder where the affidavits presented in support of the claim merely asserted that the product at issue had not been defectively designed).  In this case, of course, Merck has produced no evidence that Walgreens and Osco Drugs never sold Vioxx to any of the Plaintiffs. Therefore, based on the Court's review of the pleadings, the Court concludes that Merck has failed to show fraudulent joinder as to Plaintiffs' claims for strict products liability and negligence against Walgreens and Osco Drugs.

The Court finds that Merck's allegations of fraudulent joinder based on the learned intermediary doctrine fail for an additional reason.  Under Illinois law, to claim the protection of the learned intermediary doctrine, a defendant must be able to show that physicians received adequate warning of the known dangerous propensities of a prescription drug.  In *Proctor v. Davis*, 682 N.E.2d 1203 (Ill. App. Ct. 1997), the court held that a drug manufacturer that shared information about its product's toxicity only with its own employees breached its duty to warn the medical community because, without such information, doctors could not provide appropriate and comprehensive medical advice for their patients.  The court said, "Doctors who have not been sufficiently warned of the harmful effects of a drug cannot be considered 'learned intermediaries,'" capable of protecting their patients' best medical interests.  *Id.* at 1215.  Furthermore, the court said, "the adequacy of warnings is a question of fact, not law, for the jury to determine."  *Id*.

Plaintiffs' complaint in this case alleges that Merck failed to warn physicians of the adverse effects of Vioxx.  To cite a few examples:

> The Vioxx manufactured and supplied by Merck was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Vioxx, and the comparative severity and duration of the adverse effects.  The warnings given by Merck did not accurately reflect the symptoms, type, scope or severity of the side effects.
>
> * * * *
>
> Merck also failed to effectively warn users and physicians that numerous other methods of pain relie[f], including Ibuprofen, Naproxen, and/or aspirin were safer.
>
> * * * *
>
> Merck failed to give adequate post-marketing warnings or instructions for the use of Vioxx because after Merck knew or should have known of the risk of injury from Vioxx use, Merck failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

Compl. ¶ 58, ¶¶ 61-62.  In fact, the complaint alleges active fraud by Merck in concealing adverse health effects of Vioxx from physicians:  "Merck communicated the purported benefits of Vioxx, while failing to disclose the serious and dangerous side effects related to the use of its product, and in fact actually concealing from health care providers the adverse cardiovascular effects of Vioxx." *Id*. ¶ 93.  In light of these allegations, the applicability of the learned intermediary doctrine in this case clearly presents issues of fact that the Court must resolve in favor of Plaintiffs and in favor of remand to state court.  *See Poulos*, 959 F.2d at 73.

As a final matter, the Court expresses considerable skepticism about whether the learned intermediary doctrine is a proper basis for a claim of fraudulent joinder at all, given that the defense implicates issues about foreseeability and causation germane to the liability of both Merck and the diversity-defeating defendants.  The Court has explained previously that a claim of fraudulent joinder that "indicate[s] that the plaintiff's case [is] ill-founded as to all the defendants" is one which "manifestly [goes] to the merits of the action as an entirety, and not to the joinder" and is "not such

as to require the state court to surrender its jurisdiction." *Simmons*, 324 F. Supp. 2d at 917 (quoting

*Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 153-54 (1914)).  The issue of whether Merck

gave adequate warnings to physicians and users of Vioxx is at the heart of this case, and the Court

questions whether a finding that the non-diverse defendants are shielded from liability by the learned

intermediary doctrine might have preclusive effects with respect to Merck as well.  Presumably a

determination that Walgreens and Osco Drugs are immune from liability under the learned

intermediary doctrine would be the law of the case as to Merck.  *See Moore v. Anderson*, 222 F.3d

280, 284 (7th Cir. 2000) ("Under the law of the case doctrine, . . . when a court decides upon a rule

of law, that decision should continue to govern the same issues in subsequent stages of the same

case.").  *See also Smallwood*, 385 F.3d at 574 (explaining that, when a finding of fraudulent joinder

will have law-of-the-case effect as to the liability of diverse defendants, the "jurisdictional" issue

is in fact an attack on the merits of a plaintiff's claim that must be resolved in state court).  The

Court concludes that this action is due to be remanded to Illinois state court.[1]

---

1.      Having determined that Plaintiffs have asserted viable claims against the non-diverse
defendants for strict products liability and negligence, the Court need not determine whether they
have viable claims for breach of warranty also.  Were the Court to reach the issue, however, the
Court likely would decide that the issue presents an ambiguous question of state law that must be
resolved in favor of remand.  Merck's contention that the transactions at issue in this case do not
involve "goods" within the meaning of Article 2 of the Illinois UCC is based upon *Brandt v. Boston
Scientific Corp.*, 792 N.E.2d 296 (Ill. 2003), in which the court held that a contract involving the sale
and surgical implantation of a pubovaginal sling to treat incontinence was a transaction
predominantly for medical services, not goods.  *See id.* at 303-04.  The applicability of the holding
in *Brandt* to facts like those presented by this case is unclear, as the Court has pointed out on a prior
occasion.  *See Rabe v. Merck & Co.*, No. Civ. 05-363-GPM, Civ. 05-378-GPM, 2005 WL 2094741,
at *2 (S.D. Ill. Aug. 25, 2005).  The Court notes that in *Berry v. G. D. Searle & Co.*, 309 N.E.2d 550
(Ill. 1974), a case involving a prescription contraceptive, the court stated that the provisions of the
Illinois UCC "clearly demonstrate the legislative intent to create a statutory cause of action for
breach of implied warranty to afford consumer protection to those who sustain personal injuries
resulting from product deficiencies."  *Id.* at 553.  *See also Woodill v. Parke Davis & Co.*, 374 N.E.2d
683, 688-89 (Ill. App. Ct. 1978) (in a case arising from injuries to a child allegedly caused by the

3.      **Fraudulent Misjoinder**

Finally, Merck argues that the claims in this case are "fraudulently misjoined," relying upon

*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), in which the court discovered

a third form of fraudulent joinder in addition to the two that currently are recognized in this Circuit,

namely, "egregious" misjoinder of claims that is tantamount to fraudulent joinder.  In *Tapscott*, one

group of plaintiffs seeking to represent a class sued a group of defendants for statutory fraud arising

from the sale of automobile service contracts.  *See id.* at 1355.  Another group of plaintiffs

representing a separate putative class sued another group of defendants for statutory fraud arising

from the sale of extended service contracts in connection with the sale of retail products.  *See id.*

The court held that the defendants had been misjoined because on the face of the complaint there

was no claim against the two groups of defendants even remotely arising from the same transaction

or occurrence.  All that the claims shared was an invocation of the Alabama fraud statute, rendering

joinder "so egregious as to constitute fraudulent joinder."  *Id.* at 1360.  The *Tapscott* court

emphasized that misjoinder is tantamount to fraudulent joinder not simply when claims are

misjoined but when claims are *egregiously* misjoined:  "We do not hold that mere misjoinder is

fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these

administration of a prescription drug to the child's mother while she was hospitalized as an
obstetrical patient, holding that the plaintiffs stated a claim for breach of implied warranties against
the manufacturer of the drug).  "[I]f 'intricate analysis of state law' is needed to dismiss [a] claim,
the claim may not be disregarded for purposes of diversity jurisdiction."  *Polson v. Cottrell, Inc.*,
No. 04-CV-822-DRH, 2005 WL 1168365, at *1 (S.D. Ill. May 17, 2005) (quoting *Batoff v. State
Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992)).  *See also Dodson v. Spiliada Mar. Corp.*, 951 F.2d
40, 42 (5th Cir. 1992) ("In evaluating fraudulent joinder claims, we must . . . resolve all . . .
ambiguities in the controlling state law in favor of the non-removing party.").  Also, the Court notes
that the question of whether a transaction is predominantly for goods or services generally is one of
fact.  *See Brandt*, 792 N.E.2d at 300-01.

parties is so egregious as to constitute fraudulent joinder." *Id*.

The United States Court of Appeals for the Seventh Circuit has not had occasion to pass on the validity of the doctrine of "fraudulent misjoinder" crafted in *Tapscott*. This Court gives respectful consideration to decisions of courts of appeals in sister circuits, *see Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987), but the Court declines to follow *Tapscott*. In the Court's view, whether viable state-law claims have been misjoined – even "egregiously" misjoined – is a matter to be resolved by a state court. Nothing in the jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court. *See Southern Ry. Co. v. Lloyd*, 239 U.S. 496, 500 (1916) (holding that fraudulent joinder is not shown by "undertaking to try the merits of a cause of action, good upon its face"); *Chicago, Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915) (holding that there is no fraudulent joinder when "the plaintiff has a right of action under the law of the state and to insist upon [a non-diverse defendant's] presence as a real defendant.").

Furthermore, the federal courts traditionally have held that matters of state civil procedure, including, presumably, joinder of parties and claims, have no bearing on the existence or non-existence of federal subject matter jurisdiction in a given case. For example, in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), the Court determined that a plaintiff against whom a counterclaim had been filed could not remove a case to federal court because the removal statute granted the privilege of removal to defendants only. The plaintiff argued that it was essentially a defendant because, under state procedural rules, a judgment could be entered against it. The Court stated,

> But at the outset it is to be noted that decision turns on the meaning of the removal statute and not upon the characterization of the suit or the parties to it by state statutes or decisions.  The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied.  Hence the Act of Congress must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts.

*Id*. at 104 (citation omitted).  *See also Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954) (state "procedural provisions cannot control the privilege [of] removal granted by the federal statute.").  The lower federal courts likewise traditionally have recognized that "[t]he question of jurisdiction cannot be determined by the rules of joinder."  *Smith v. Abbate*, 201 F. Supp. 105, 113 (S.D.N.Y. 1961).  *See also Edward J. Moriarty & Co. v. General Tire & Rubber Co.*, 289 F. Supp. 381, 385 (S.D. Ohio 1967) (joinder under the Federal Rules of Civil Procedure "is limited to the extent that jurisdictional requirements must be met."); *Fechheimer Bros. Co. v. Barnwasser*, 3 F.R.D. 394, 395 (E.D. Ky. 1944) (rules of joinder cannot be construed "to extend or limit the jurisdiction of the courts of the United States.").

In the Court's view, the *Tapscott* doctrine is an improper expansion of the scope of federal diversity jurisdiction by the federal courts.  *See In re Norplant Contraceptive Prods. Liab. Litig.*, 976 F. Supp. 559, 561 (E.D. Tex. 1997) (declining to sever claims to permit removal in diversity jurisdiction, and observing that "two major policies announced in removal jurisprudence [are] that federal courts must apply the removal statutes in a manner that carries out the intent of Congress to restrict removal, and that cases should be remanded if jurisdiction is doubtful."); *Moore v. Mobil Oil Corp.*, 904 F. Supp. 587, 588 (E.D. Tex. 1995) (rejecting the defendants' "argument sounding in equity and public policy" for severance of claims to permit removal in diversity:  "This court cannot rewrite the removal statute to grant itself subject matter jurisdiction over this action . . . . [I]t is

abundantly clear that Congress has not vested in federal district courts the power to fashion equitable removal solutions to procedural complexities.").  However, even assuming for the sake of argument that issues of permissive joinder under state law somehow trench upon federal subject matter jurisdiction, there are further reasons for declining to adopt the *Tapscott* doctrine.

As the Seventh Circuit Court of Appeals has observed many times, most recently in *Knudsen v. Liberty Mutual Insurance Co.*, 411 F.3d 805 (7th Cir. 2005), "the first virtue of any jurisdictional rule is clarity and ease of implementation." *Id.* at 806.  "The first characteristic of a good jurisdictional rule is predictability and uniform application."  *Exchange Nat'l Bank of Chicago v. Daniels*, 763 F.2d 286, 292 (7th Cir. 1985).  "Jurisdictional rules ought to be simple and precise so that judges and lawyers are spared having to litigate over not the merits of a legal dispute but where and when those merits shall be litigated."  *In re Lopez*, 116 F.3d 1191, 1194 (7th Cir. 1997).  "The more mechanical the application of a jurisdictional rule, the better.  The chief and often the only virtue of a jurisdictional rule is clarity." *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987) (citations omitted).  In short, "jurisdictional rules should be as simple as possible." *Kennedy v. Wright*, 851 F.2d 963, 967 (7th Cir. 1988) (quoting *Cote v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986)).

The reasons underlying the policy favoring simple, easy-to-apply jurisdictional rules are obvious.  First, it is, by definition, harmful to federalism and a plaintiff's presumptive right to choose his or her forum for federal courts to exercise jurisdiction they do not possess.  *See Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 531 (S.D.N.Y. 2005) ("It is well settled that removal statutes are to be strictly construed against removal, with all doubts resolved in favor of remand, as removal jurisdiction undercuts federalism and abridges the deference courts generally

give to a plaintiff's choice of forum."). Second, the consequences of erroneous jurisdictional decisions can be very serious for both courts and litigants, in terms of wasted time and resources. *See, e.g., Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 319-20 (7th Cir. 1998) (after three years of litigation, dismissing a case on appeal for lack of subject matter jurisdiction based on an issue of first impression). *See also McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 336-37 (5th Cir. 2004) (after a full trial on the merits and a judgment for the defendant, on appeal ordering a removed case remanded to state court for lack of subject matter jurisdiction due to the trial court's erroneous finding of fraudulent joinder).

The Court's review of the caselaw regarding the fraudulent misjoinder doctrine that has emerged in the ten years since *Tapscott* was decided discloses enormous judicial confusion engendered by the doctrine. For example, a number of courts, applying *Tapscott*, have held that mere misjoinder gives rise to removal jurisdiction. *See, e.g., Burns v. Western S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D.W.Va. 2004) ("In this district, the 'egregious' nature of the misjoinder is not relevant to the analysis."); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 147-48 (S.D.N.Y. 2001) ("While aware that several courts have applied *Tapscott*'s egregiousness standard when considering misjoinder of plaintiffs in the context of remand petitions, . . . this Court respectfully takes another path."). Other courts adhere, however, to the classical *Tapscott* doctrine that only when joinder that otherwise is questionable, or even improper, undergoes a sinister transformation into something "egregious" does it become an issue that implicates the subject matter jurisdiction of a federal court. *See, e.g., Asher v. Minnesota Mining & Mfg. Co.*, No. Civ.A. 04CV522KKC, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 2005) ("[S]omething more than 'mere misjoinder' is required before this Court may take the extraordinary step of exercising

jurisdiction over an action where jurisdiction is lacking on the face of the complaint."); *Bright v. No Cuts, Inc.*, No. Civ. A. 03-640, 2003 WL 22434232, at *9 (E.D. La. Oct. 27, 2003) ("[M]ere misjoinder . . . is more properly addressed to the state district court."); *Johnson v. Glaxo Smith Kline*, 214 F.R.D. 416, 421 (S.D. Miss. 2002) ("Since the Court has found that . . . joinder of the plaintiffs' claims against the [defendants], even if not proper, does not rise to the level of fraudulent joinder, the Court shall let the state court decide the issues of improper joinder and severance."); *Alman v. GlaxoSmithKline Corp.*, No. Civ. A. 02-006, 2002 WL 465202, at *4 (E.D. La. Mar. 25, 2002) ("Whereas 'fraudulent joinder' is properly addressed by the federal District Court, the issue of 'misjoinder' is more properly addressed to the state District Court.").

Also, even among those courts that accept "egregious" misjoinder as the predicate to application of the *Tapscott* doctrine, no clear definition of "egregiousness" has emerged.  *See, e.g., Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) ("[T]he governing legal standards regarding the fraudulent misjoinder doctrine are far from clear."); *Bright*, 2003 WL 22434232, at *4 n.21 ("While the *Tapscott* [c]ourt was clear that 'mere misjoinder' is not equivalent to fraudulent misjoinder, this aspect of the *Tapscott* holding has engendered confusion among courts and commentators alike."); *In re Bridgestone/Firestone, Inc.*, 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003) ("[U]nder *Tapscott*, something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder.  Precisely what the 'something more' is was not clearly established in *Tapscott* and has not been established since.").

Many courts have foundered on shoals of tautology in trying to define fraudulent misjoinder. *See, e.g., Walton*, 338 F. Supp. 2d at 695 (defining "egregious misjoinder" as joinder that is "grossly improper"); *Barron v. Miraglia*, No. 4:04-CV-376-A, 2004 WL 1933225, at *2 (N.D. Tex. Aug. 30,

2004) (defining fraudulent misjoinder as joinder that is "totally unsupported"); *Rudder v. Kmart Corp.*, No. Civ. A. 97-0272-BH-S, 1997 WL 907916, at *6 (S.D. Ala. Oct. 15, 1997) (defining fraudulent misjoinder as joinder that is "egregious, unreasonable, and patently wanting in any colorable basis"). In *Terrebonne Parish School Board v. Texaco, Inc.*, No. Civ. A. 98-0115, 1998 WL 160919 (E.D. La. Apr. 3, 1998), the court defined egregious misjoinder as the absence of a "palpable connection" between claims asserted against diverse and non-diverse defendants. *Id.* at *3. Other courts have suggested that joinder is egregious where it is "collusive," *Koch v. PLM Int'l, Inc.*, No. Civ.A. 97-0177-BH-C, 1997 WL 907917, at *4 (S.D. Ala. Sept. 24, 1997), or where joinder of claims is characterized by "bad faith." *In re Rezulin*, 168 F. Supp. 2d at 147 (observing that "courts considering the issue [of egregious misjoinder] generally have looked for the additional element of a bad faith attempt to defeat diversity."). Still other courts insist, however, that a plaintiff's subjective motive for joining claims is irrelevant in evaluating fraudulent misjoinder. *See, e.g., Asher*, 2005 WL 1593941, at *7 n.2 ("As with the fraudulent joinder analysis, the Court does not believe that the plaintiff's actual motive is relevant to the analysis of whether the plaintiffs' claims are misjoined under state or federal rules.").

A number of courts seem to have adopted the view that egregious misjoinder is tested by whether there is a reasonable probability that a state court would find proper joinder. *See, e.g., Moore v. SmithKline Beecham Corp.*, 219 F. Supp. 2d 742, 746 (N.D. Miss. 2002) (finding that the joinder of plaintiffs was not egregious because there was "at least a possibility that the state court would find joinder proper in this case"); *Johnson*, 214 F.R.D. at 422 (finding that the joinder of defendants was not fraudulent because there was a possibility that the state court would find joinder proper); *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999) ("[T]he court

believes the controlling standard is essentially the same that applies to fraudulent joinder:  Is there a reasonable possibility that a state court would find [proper joinder]?").  However, there are at least two reasons why the Court cannot adopt this standard.

First, under the law of this Circuit, a case removed from state court to federal court becomes, "when it arrive[s] there, . . . subject to the same rules of procedure as if it had been originally sued in [federal] court."  *Grivas v. Parmelee Transp. Co.*, 207 F.2d 334, 337 (7th Cir. 1953).  *See also Twin Disc, Inc. v. Lowell*, 69 F.R.D. 64, 65 (E.D. Wis. 1975) (despite the fact that a suit was begun in state court, timely removal of the suit to a federal district court causes the Federal Rules of Civil Procedure to become controlling as to the suit).  *Cf. Savarese v. Edrick Transfer & Storage, Inc.*, 513 F.2d 140, 144 n.6 (9th Cir. 1975) (state rules of procedure are overridden by federal rules in removed actions).[2]  Second, any jurisdictional principle that requires federal courts as a regular matter to construe state procedural rules and to pronounce on the propriety of joinder thereunder strikes the Court as an exceptionally weird and pernicious intrusion by federal courts into matters properly of state concern and a disruption of the orderly development of state law.  *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 638 (7th Cir. 2002) (citing *Younger v. Harris*, 401 U.S. 37, 44 (1971)) (noting that the *Erie* doctrine, requiring federal courts to apply and in some instances predict

---

2.     Not the least of the confusion created by *Tapscott* is an ongoing debate among federal courts about whether egregious misjoinder is tested using federal or state procedural rules. *See, e.g., In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651 n.141 (S.D. Tex. 2005) (applying federal rules); *Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1274 (M.D. Ala. 2001) (same); *Koch*, 1997 WL 907917, at **3-4 (same).  *But cf. Walton*, 338 F. Supp. 2d at 695-96 (applying state procedural rules); *Lyons v. Lutheran Hosp. of Ind.*, No. 104CV0728DFHVSS, 2004 WL 2272203, at *5 (S.D. Ind. Sept. 15, 2004) (same); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 673-74 (E.D. Pa. 2003) (same).  According to one court, state procedural rules are carrying the day.  *See Asher*, 2005 WL 1593941, at *6.  The Court notes that the *Tapscott* decision employed the federal joinder rule.  *See* 77 F.3d at 1359-60.

the content of state substantive law, has "the potential for significant intrusion" into state law, "sometimes with disastrous results," and cautioning that the task of applying and predicting state law "be undertaken with great care, thoroughness and a full realization of the impact that the process, even when executed adroitly, has on 'Our Federalism.'").

Finally, just as no clear standards for the application of the *Tapscott* doctrine have emerged, the Court predicts that no such standards will emerge.  The Court is well aware from its experience that determinations about proper joinder are of necessity highly discretionary, involving intensely case-specific decisions about the fairest and most economical way to adjudicate particular claims.  *See Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982) (a federal court has "wide discretion" in deciding whether to dismiss a party as a defendant in a civil action); *Kuechle v. Bishop*, 64 F.R.D. 179, 180 (N.D. Ohio 1974) (in assessing permissive joinder of parties, "the Court is operating in an area of considerable discretion. The consideration[s] involved are essentially those of fairness.").  In other words, proper joinder is, to a very great extent, in the eye of the beholder.  Although most exercises of a trial court's discretion are shielded on appeal by a deferential standard of review, discretionary decisions masked as jurisdictional ones are not.  *See Storm v. Storm*, 328 F.3d 941, 943 n.1 (7th Cir. 2003) ("Because the existence of subject matter jurisdiction goes to the ultimate question of whether the federal courts have the power to entertain and decide a case, we emphasize that our review in such situations is de novo.").  The Court fails to see how the adoption of the *Tapscott* doctrine, which elevates a court's discretion concerning joinder into a jurisdictional principle, is likely to promote predictable results at either the trial court level or on review.  In sum, the Court has refused to follow *Tapscott* in the past, *see Rabe*, 2005 WL 2094741, at *2, and the Court will continue to do so until such time as the doctrine

of fraudulent misjoinder is adopted by the Supreme Court of the United States or the Seventh Circuit Court of Appeals.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion to Remand (Doc. 18) is **GRANTED**.  Pursuant to 28 U.S.C. § 1447(c), this action is **REMANDED** to the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, for lack of federal subject matter jurisdiction.  The Motion to Stay brought by Defendant Merck & Co. (Doc. 4), the Motion to Sever brought by Defendant Merck & Co. (Doc. 5), the Motion to Dismiss brought by Defendant American Drug Stores, Inc. (Doc. 10), and the Motion to Dismiss brought by Defendant Walgreen Co. (Doc. 15) are **DENIED as moot**.

**IT IS SO ORDERED.**

DATED:  04/20/2006

s/ G. Patrick Murphy_____
G. PATRICK MURPHY
Chief United States District Judge